The STATE of Ohio, Appellee,

v.

GRANDERSON, Appellant.

[Cite as *State v. Granderson,* 177 Ohio App.3d 424, 2008-Ohio-3757.]

Court of Appeals of Ohio,
Fifth District, Delaware County.

No. 2007CAA–01–0005.

Decided July 29, 2008.

426

David A. Yost, Delaware County Prosecuting Attorney, for appellee.

Michael C. Hogue;  and Stuart A. Benis, for appellant.

DELANEY, Judge.

{¶ 1} Defendant-appellant, Huey Granderson Jr., appeals from his conviction for one count of theft, a fourth-degree felony, in the Delaware County Court of Common Pleas.

{¶ 2} The facts giving rise to this conviction are as follows.  In October 2005, appellant contacted Bobcat Enterprises, a company in the business of renting and selling construction equipment, regarding the rental of a utility work machine known as a "Tool–Cat."  On October 17, 2005, Ronald Eckleberry of Bobcat Enterprises called appellant and told him he could deliver a Tool–Cat the following day.  Appellant wanted the equipment delivered to 6217 Africa Road in Delaware County, Ohio, a property owned by one John Leppert.  Appellant's girlfriend, Meagan Kurczewski, went to Bobcat Enterprises the next morning and gave Eckleberry her driver's license and a $500 check for a deposit.  Eckleberry did not have Kurczewski sign a rental contract.

{¶ 3} On the afternoon of October 18, 2005, Richard Lemaster of Bobcat Enterprises took the Tool–Cat to 6217 Africa Road, as previously arranged with appellant.  Appellant was not present at the time of delivery, so Lemaster called

appellant on his cell phone and agreed to leave the equipment at the delivery location.

{¶ 4} At approximately 10:30 p.m. that day, a neighbor across the street saw taillights at 6217 Africa Road. She noted this because the property was vacant. At 12:30 a.m. on October 19, 2005, appellant called Eckleberry to ask whether the equipment had been delivered. Eckleberry told appellant that it had been delivered that afternoon. Eckleberry called appellant at 6:15 a.m. on October 19, 2005, to ask whether the equipment had been located. Appellant did not find it and reported the missing equipment to the Delaware County Sheriff's Office. The Sheriff's Office told appellant that an agent of Bobcat Enterprises needed to report the theft because appellant claimed that he had not seen the delivered equipment. Lemaster met Deputy Burke at the Africa Road location to make a report. Later, Kurczewski placed a stop-payment order on the $500 check she had written to Bobcat Enterprises.

{¶ 5} Detective Dan Otto of the Delaware County Sheriff's Office interviewed appellant over the telephone regarding the incident. Appellant stated that he had been hired to clear the property at 6217 Africa Road. Appellant gave Detective Otto the cell phone number of the company that was assisting him in clearing the property. Detective Otto also interviewed Leppert, the owner of the property, and discovered that appellant had not been hired to do a job there. Leppert also told the detective that he had allowed appellant to store items on the property in the past.

{¶ 6} Detective Otto left numerous messages on the voicemail of the cell phone number appellant gave him. There was a message indicating that the cell phone was for a business called "Two Men and a Bobcat." Detective Otto traced the cell phone number and discovered that one John M. Hodge owned the cell phone. Detective Otto, with the assistance of the Hocking County Sheriff's Office, made contact with Hodge. Detective Otto discovered that appellant and Hodge were friends who spoke daily. Detective Otto presented cell phone records that traced the cell phone for Two Men and a Bobcat to Hodge. Hodge stated that appellant had asked him to place this message on the cell phone voicemail and that he had provided appellant with the message code to check the voicemail. Detective Otto detailed these statements in a written summary.

{¶ 7} On February 24, 2006, the Delaware Grand Jury indicted appellant on one count of theft in violation of R.C. 2913.02(A)(2), a fourth-degree felony, one count of obstruction of justice in violation of R.C. 2921.32(A)(5), a fifth-degree felony, and one count of breaking and entering in violation of R.C. 2911.13(A), a fifth-degree felony. Appellant pleaded not guilty to all counts.

{¶ 8} Kurczewski also was indicted on one count of theft in violation of R.C. 2913.02(A)(2), a fourth-degree felony. Hodge was indicted on one count of theft

in violation of R.C. 2913.02(A)(2), a fourth-degree felony, and one count of breaking and entering in violation of 2911.13(A), a fifth-degree felony.

{¶ 9} On September 26, 2006, Hodge pleaded guilty to the lesser included offense of attempted theft, a fifth-degree felony, and the charge of breaking and entering was dismissed. During his plea allocution, Hodge stated that appellant had Kurczewski rent the equipment. Further, he stated that appellant had the equipment delivered to the Africa Road location. He testified that he helped appellant load the equipment onto a trailer and that appellant took it and reported it stolen. However, Hodge subsequently changed legal counsel and informed the trial court that he wished to withdraw his guilty plea. A hearing was held on October 20, 2006. Hodge appeared with new counsel but advised the trial court that he did not want to withdraw the plea and he wished to stand on his guilty plea. His sentencing was scheduled for November 20, 2006.

{¶ 10} The case against appellant and Kurczewski proceeded to trial on November 14, 2006. After several witnesses testified, the state asked the trial court to call Hodge as a witness pursuant to Evid.R. 614, which provides: "The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

{¶ 11} The prosecutor said, "During the course of interviewing [Hodge] in preparing him to testify in this matter, his story changed. * * * [T]he State feels that his testimony here today may be inconsistent with his, both allocution or prior statement given during the course of this case. Knowing that he may give an inconsistent statement, I'm obviously not surprised and nor can I claim affirmative damage which prohibits me from impeaching him with his own statement should that case arise."

{¶ 12} The defense objected on the grounds that the state's motion was untimely and because the state only informed defense counsel that Hodge might take the Fifth Amendment. The trial court sustained the state's motion and called Hodge. Hodge appeared with legal counsel, who informed the court that he would be advising Hodge not to answer certain questions based upon his Fifth Amendment privilege.

{¶ 13} Prior to testifying, the trial court informed the jury that Hodge had been found guilty of the crime of attempted theft "arising out of the same factual situation here, with the Bobcat, was found guilty of that and there has been a plea of guilt on the 26th day of September, of this year. He is awaiting sentence."

{¶ 14} After preliminary questions, the trial court asked Hodge, without objection or an assertion of the Fifth Amendment privilege:

{¶ 15} "Q: Can you tell us what Two Men and a Bobcat is?

{¶ 16} "A: It was a message I put on my cell phone for Huey Granderson.

{¶ 17} " * * *

{¶ 18} "Q: Why did you put that on your cell phone for Huey Granderson?

{¶ 19} "A: He called me and asked me to put it on my cell phone because a detective would be calling.

{¶ 20} "Q: When did you put it on your cell phone for Mr. Granderson?

{¶ 21} "A: On October 19th of the last year.

{¶ 22} "Q: 2005?

{¶ 23} "A: 2005.

{¶ 24} "Q: What was your cell phone number, sir?

{¶ 25} "A: (614)329–5179.

{¶ 26} "Q: What was the discussion, as best you recall, when Mr. Granderson asked you to put this on your phone?

{¶ 27} "A: He called—"

{¶ 28} Hodge's testimony was then interrupted by his legal counsel, who advised Hodge not answer based upon his Fifth Amendment privilege. The trial court then proceeded to ask Hodge a series of open-ended questions, but then began questioning him about the events of October 2005, whereupon Hodge again asserted the Fifth Amendment privilege.

{¶ 29} The trial court then questioned Hodge about the allocution he made on September 26, 2005.

{¶ 30} "Q: Mr. Hodge, during the allocution here in this open court, you told this court that you assisted Mr. Granderson in putting the Bobcat on a trailer and removing it from this property; yes or no?

{¶ 31} "A: "Yes.

{¶ 32} "Q: That Mr. Granderson, that you testified to on the 26th of September, is the gentleman sitting here, wearing the white shirt, as you identified earlier; correct?

{¶ 33} "A: Yes."

{¶ 34} Hodge then asserted the Fifth Amendment privilege to the court's further inquiry regarding more specifics of the theft. Thereafter, the trial court handed Hodge the summary of his statement to Detective Otto. Outside the presence of the jury, the trial court informed counsel that since Hodge had not withdrawn his guilty plea after having the opportunity, he had waived his right under the Fifth Amendment, and the court ordered him to answer questions or be found in contempt.

{¶ 35} The trial court went back in session before the jury and the judge began to question Hodge, as follows:

{¶ 36} "Q: During the recess did you read the summary that was marked as Court's Exhibit 2?

{¶ 37} "A: Yes.

{¶ 38} "Q: Is there anything in that summary that you feel is not correct?

{¶ 39} "A: No, sir.

{¶ 40} " * * *

{¶ 41} "Q: And you already told us here today, correct that you did have knowledge of Two Men and a Bobcat?

{¶ 42} "A: Yes.

{¶ 43} "Q: You put something on a cell phone that would make anyone calling that number think they were talking to a machine at Two Men and a Bobcat?

{¶ 44} "A: Yes, sir.

{¶ 45} " * * *

{¶ 46} "Q: Going back to Court's Exhibit 1, the transcript statement made here in open court when you pled guilty. You read that now; correct?

{¶ 47} "A: Yes, sir.

{¶ 48} "Q: Is there anything in that statement that was not truthful?

{¶ 49} "A: I assert my Fifth Amendment."

{¶ 50} Thereafter, Hodge was cross-examined by both the state and defense counsel. Hodge again confirmed that he had set up the voicemail message on his cell phone for Two Men and A Bobcat at the request of appellant on October 19, 2006, and that he had given appellant the code to check messages. He further denied ever being in business as Two Men and A Bobcat. Hodge conceded that he had initially denied any knowledge of Two Men and a Bobcat to the police, but when he was confronted with cell phone records, he changed his story.

{¶ 51} At the end of the state's case, the prosecutor moved for the admission of exhibits, including the allocution and Detective Otto's summary interview of Hodge. The prosecutor noted that there was no objection to either exhibit. A general objection to these exhibits was then made by defense counsel. The trial court overruled the objection.

{¶ 52} Upon a Crim.R. 29 motion, the trial court dismissed the charges against Kurczewski and dismissed the charges of obstruction of justice and breaking and entering against appellant.

{¶ 53} At the beginning of the defense case, counsel for appellant was permitted to make supplemental arguments as to his objection to the allocution and the police summary. The trial court admitted the exhibits as "prior consistent statements" or "the business records as an exception to the hearsay rule."

{¶ 54} Thereafter, the jury returned a guilty verdict on one count of theft against appellant.

{¶ 55} The trial court sentenced appellant to 17 months' imprisonment, imposed a fine of $10,000, and imposed restitution in the amount of $41,500.

{¶ 56} Appellant now appeals, raising five assignments of error:

{¶ 57} "I. The trial court committed an abuse of discretion when the judge interrogated a witness, an alleged accomplice, in a manner that conveyed to the jury the judge's personal appraisal of the witness' credibility and the merits of the state's case and thereby violated the appellant's rights to due process, fundamental fairness and to have a fair trial by an impartial jury, which are guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as, Article I, Section 10 of the Ohio Constitution.

{¶ 58} "II. The trial court abused its discretion by admitting a transcript of the allocution of an accomplice witness and a written summary of the accomplice's interview with police investigators as trial exhibits and substantive evidence and in so doing violated the appellant's rights, which are guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as, Article I, Section 10 of the Ohio Constitution.

{¶ 59} "III. Appellant's right under the United States and Ohio Constitutions to confront and cross examine witnesses was denied when John Hodge's prior testimony and statements were admitted without the benefit of effective cross-examination.

{¶ 60} "IV. The court erred to the prejudice of the defendant by imposing a fine of $10,000 when the maximum fine for the offense is 5,000.

{¶ 61} "V. The trial court committed reversible error by ordering restitution in an amount in excess of the amount of actual economic loss suffered by the victim as a result of defendant's alleged criminally injurious conduct."

I

{¶ 62} In his first assignment of error, appellant argues that when the trial court called Hodge as a witness under Evid.R. 614(B), it questioned the witness in a manner that was partial and violated appellant's right to a fair trial.

{¶ 63} Prior to addressing the merits of appellant's argument, we note that defense counsel did not object to the manner in which the trial court examined Hodge. Therefore, we must review this assignment of error under a plain-error analysis pursuant to Crim.R. 52(B). This rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 448 N.E.2d 452.

{¶ 64} Appellant concedes that a trial court has the right to call and interrogate witnesses as an exercise of its discretion and will be reversed only when the trial court abused its discretion. *State v. Forehope* (1991), 71 Ohio App.3d 435, 594 N.E.2d 83. An abuse of discretion can be shown only when the judgment of the trial court is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Pursuant to Evid.R. 614(A), "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The only restriction is that any interrogation by the court must be in an impartial manner. Evid.R. 614(B).

{¶ 65} Appellant argues that when the trial court questioned Hodge, the trial court failed to ask questions in an impartial manner and exhibited bias in the leading questions asked that prejudiced the jury against him. We disagree.

{¶ 66} "A trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant." *State v. Blankenship* (1995), 102 Ohio App.3d 534, 548, 657 N.E.2d 559, 568, citing *State v. Hammond* (Dec. 5, 1988), Clinton App. No. CA87–11–026, 1988 WL 129474. In the case at bar, the trial court questioned Hodge about his relationship to appellant and the events of October 2005. The trial court asked background questions of Hodge. During some of Hodge's testimony, he asserted the Fifth Amendment. The trial court questioned Hodge concerning his exact role in the crime of which appellant was accused based upon Hodge's prior statements. A review of the record shows that most of the questions were open ended and all were relevant to the material issue of whether appellant committed a theft.

{¶ 67} We find that appellant has failed to demonstrate that the trial court questioned Hodge in a biased or partial manner so as to have a prejudicial effect on the outcome of the proceedings. Further, the trial court instructed the jury to disregard anything indicating his views on the case. It must be presumed that

the jury followed the court's instruction. *State v. Loza* (1994), 71 Ohio St.3d 61, 79, 641 N.E.2d 1082.

{¶ 68} Based upon our review of the record, we find that the trial court did not commit plain error in the manner in which it questioned Hodge. Appellant's first assignment of error is overruled.

## II

{¶ 69} In his second assignment of error, appellant argues that the trial court abused its discretion in admitting the transcript of Hodge's allocution and the summary of the police interview of Hodge. Specifically, appellant argues that both of these statements are inadmissible hearsay and should have been excluded at trial.

{¶ 70} The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 31 OBR 375, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing the disputed evidence. See *State v. Oman* (Feb. 14, 2000), 5th Dist. No. 1999CA00027, 2000 WL 222190.

{¶ 71} The trial court found the allocution and police summary to be admissible as prior consistent statements and under the business-records exception to the hearsay rule.

{¶ 72} We will first examine whether the allocution and police summary are prior consistent statements.[1] Evid.R. 801(D)(1)(b) states that a "statement is not hearsay if [t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." Such rule permits the "rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story or falsified his testimony in response to improper motivation or influence * * *." *State v. Lopez* (1993), 90

---

1. The state argues that the allocution should be admitted as a prior inconsistent statement under Evid.R. 613(B). Evid.R. 613(B), captioned "Extrinsic evidence of prior inconsistent statement of witness," permits impeachment of self-contradictory statements and the use of extrinsic evidence to so impeach. *State v. Francis* (Feb. 23, 2000), Guernsey App. No. 98CA24, 2000 WL 221947. This argument is flawed because Hodge did not testify inconsistently with his prior testimony. The trial court recognized this and labeled Hodge's statements consistent.

Ohio App.3d 566, 578, 630 N.E.2d 32, citing *Motorists Mut. Ins. Co. v. Vance* (1985), 21 Ohio App.3d 205, 207, 21 OBR 219, 486 N.E.2d 1206.

{¶ 73} For this rule to apply to the allocution and police summary, Hodge must have testified and then a charge made against him of "recent fabrication or improper influence or motive" during his testimony. *State v. Totarella*, 11th Dist. No. 2002–L–147, 2004-Ohio-1175, 2004 WL 473382, citing *Tome v. United States* (1995), 513 U.S. 150, 167, 115 S.Ct. 696, 130 L.Ed.2d 574; *State v. Nichols* (1993), 85 Ohio App.3d 65, 71, 619 N.E.2d 80.

{¶ 74} Upon our review of the record, we did not find any suggestion in the questioning of Hodge to indicate a charge of "recent fabrication or improper influence or motive" on the part of Hodge. Based on this absence of evidentiary support, the allocution and police summary should not have been admitted as a prior consistent statement under Evid.R. 801(D)(1)(b).

{¶ 75} The trial court also stated that the allocution and police summary were admitted as business records, which are exceptions to the hearsay rule. Generally, hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible unless it falls within one of the exceptions to hearsay. Evid.R. 802. The business-records exception is contained in Evid.R. 803(6) and states:

{¶ 76} "A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

{¶ 77} It is well established that police reports are generally inadmissible hearsay and should not be submitted to the jury. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229. In addition, the state has failed to cite, nor has this court found, an Ohio court decision recognizing plea allocutions as Evid.R. 803(6) business records.

{¶ 78} Nevertheless, even if appellant were to demonstrate that the trial court erred in sending the allocution and police summary to the jury, any error was harmless because the allocution and police summary were cumulative to Hodge's in-court testimony. We note that harmless error is described as

"[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Error is harmless beyond a reasonable doubt when the remaining evidence constitutes overwhelming proof of the defendant's guilt. *State v. Williams* (1988), 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910. Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right. *State v. Lockhart*, 5th Dist. No. 06CAA100080, 2008-Ohio-57, 2008 WL 94733.

{¶ 79} In his allocution, Hodge stated that appellant had the equipment delivered to the Africa Road location. He admitted to assisting appellant in loading the equipment on a trailer. Finally, he stated that he put a message on his cell phone with a business name at appellant's request. The police summary included similar statements that Hodge made to Detective Otto regarding the cell phone message.

{¶ 80} At trial, Hodge testified independently to the same facts set forth in the allocution and summary. Hodge testified, without objection, that he set up the voicemail message on his cell phone for Two Men and A Bobcat at the request of appellant on October 19, 2006, and that he gave appellant the code to check messages. He further denied ever being in business as Two Men and A Bobcat. Hodge stated that he assisted appellant in loading the Tool–Cat on a trailer. Hodge's testimony was cumulative of the statements in the allocution and police summary. Further, Hodge was subject to cross-examination by appellant's trial counsel; therefore, there was no prejudice to appellant. Accordingly, we find that the admission of these exhibits was harmless.

{¶ 81} Appellant's second assignment of error is overruled.

### III

{¶ 82} Appellant argues in his third assignment of error that he was denied the right to cross-examine witnesses when the trial court admitted the allocution of Hodge. The Sixth Amendment of the United State Constitution guarantees a criminal defendant the right to confront witnesses against him. Admission of a declarant's prior testimonial statements are barred by the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable to testify at trial and the defendant has had the opportunity to cross-examine the declarant. *Crawford v. Washington* (2004), 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Allocutions have previously been found to be testimonial and in violation of the Confrontation Clause under *Crawford*. *United States v. Lombardozzi* (2nd Cir.2007), 491 F.3d 61.

{¶ 83} We first note that appellant did not make a *Crawford* objection at trial. An appellate court need not consider an error not called to the trial court's

attention at a time when the error could have been avoided or corrected by that court. *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 364 N.E.2d 1364. "Accordingly, a claim of error in such a situation is usually deemed to be waived absent plain error." *State v. Hill* (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274, citing Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 448 N.E.2d 452.

{¶ 84} Therefore, because it is clear from the record that appellant did not object at trial to the admittance of the allocution on constitutional grounds, we review his constitutional challenge for plain error only.

{¶ 85} Hodge testified at trial consistently with statements made in the allocution, as we have examined under the second assignment of error. Appellants counsel had an opportunity to cross-examine Hodge. The admission of the allocution was cumulative of Hodges testimony at trial. Because Hodge was available, testified consistently, and was cross-examined, the Confrontation Clause is not implicated. The admission of the allocution was not plain error.

{¶ 86} Accordingly, appellant's third assignment of error is overruled.

IV

{¶ 87} Appellant argues in his fourth assignment of error that the trial court erred in imposing a $10,000 fine when the statutory maximum fine is $5,000.

{¶ 88} Criminal fines are mandated by R.C. 2929.18, which states:

{¶ 89} "(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * *.

{¶ 90} "(3) a fine payable by the offender to the state, to a political subdivision when appropriate for a felony, or as described in division (B)(2) of this section to one or more law enforcement agencies, in the following amount: * * * (d) For a felony of the fourth degree, not more than five thousand dollars * * *."

{¶ 91} Appellee concedes that the maximum fine is $5,000. Because the trial court imposed a fine of $10,000, in excess of the statutory maximum, that portion of the trial court's sentencing order is reversed and remanded for further proceedings to impose a fine consistent with R.C. 2929.18(A)(3)(d). Accordingly, appellant's fourth assignment of error is sustained.

V

{¶ 92} In his fifth assignment of error, appellant contends that the trial court committed error when it ordered restitution in the amount of $49,000, because it exceeds the actual economic loss by the victim. We first note that the trial court in its sentencing entry and at the sentencing hearing ordered restitution in the amount of $41,500, not $49,000 as contended by appellant.

{¶ 93} R.C. 2929.18(A)(1) gives a trial court authority to impose restitution. This section states:

{¶ 94} "Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."

{¶ 95} In *State v. Castaneda*, 168 Ohio App.3d 686, 2006-Ohio-5078, 861 N.E.2d 601, this court found that an order of restitution must be supported by competent and credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty. *Castaneda*, ¶ 18, citing *State v. Gears* (1999), 135 Ohio App.3d 297, 300, 733 N.E.2d 683. A trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. Id., citing *State v. Williams* (1986), 34 Ohio App.3d 33, 516 N.E.2d 1270. The state bears the burden of establishing the restitution amount. Id. Appellant argues that the state failed to present sufficient competent and credible evidence from which the court could determine the amount of restitution. We disagree.

{¶ 96} At the outset, this court notes that appellant did not object to the restitution imposed at the January 17, 2007 sentencing hearing; therefore, all but plain error is waived. *Williams*, 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364.

At the hearing, the state asked for restitution in the amount of $49,274.36, which was the replacement value of the Tool–Cat. The state acknowledged that a brush tool cutter had been returned. Further, the state stated on the record: "As the court may or may not be aware, the Delaware County Sheriff's Office, shortly after Thanksgiving—received shortly after Thanksgiving, received reports that the Tool–Cat was in fact returned back to the Leppert property, and found on the Leppert property. Detective Otto went out, and it appeared to be the same Tool–Cat, even though it looks like it was painted over."

{¶ 97} In the presentence investigation ("PSI"), Lemaster valued the Tool–Cat at $41,500. The trial court heard the state's valuation of the property, considered the PSI, and imposed restitution of $41,500. We cannot determine from the record whether the painted-over Tool–Cat, which was recovered at the Leppert property, was in fact the stolen equipment or whether it was in a condition to be placed in the rental fleet of Bobcat Enterprises. Hence, we find that the imposition of restitution is supported by competent and credible evidence and that there was not plain error. Accordingly, appellant's fifth assignment of error is overruled.

{¶ 98} The judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

GWIN, P.J., and WISE, J., concur.